WILLIAM M. BAILEY, Trustee, *et al. vs.* ARNOLD BURGES *et als.*

Land bordering on tide water was platted into house lots, some of which extended below low water-mark, all the lots being defined shoreward by a fixed line, outside of which no lots were platted. Conveyance of these lots was made, and subsequently a harbor line was fixed by the state, running in front of the lots: —

*Held*, on a trustee's bill for instructions, —

a. That the fee of the soil below high water-mark was in the state.

b. That the establishment of a harbor line was permission given by the state to fill out to it.

c. That a grantee of a lot touching tide water who fills out to the harbor line holds the filled land, not under his grantor, but directly from the state.

d. That the land between high water-mark and any lot not touching high water-mark, with the right to fill to the harbor line, did not pass by the conveyance made.

A trustee's bill for instructions is not a proper proceeding to settle a disputed title to realty.

BILL IN EQUITY. The facts are stated in the opinion of the court.

*April* 8, 1876. DURFEE, C. J. This is a bill in equity brought by the plaintiff, as trustee under a deed of trust executed by the late Tristam Burges, dated March 13, 1862. We have already decided certain questions raised on the bill (see 10 R. I. 422). The case is before us now under an alternative prayer for sale and reinvestment under the statute. Gen. Stat. R. I. cap. 167, § 7; Public Laws, cap. 663 of February 28, 1867, and cap. 867 of March 31, 1870.

The property sought to be sold for reinvestment is certain real estate lying on the east bank of the Seekonk River. It was platted into lots before the deed of trust was made, and the deed of trust conveys the lots by number as platted. Some of these

lots lie partly upon the upland and partly upon the shore, and some extend over the shore beyond low water-mark; but all of them as platted are defined by a definite line as their western boundary, outside of which there are no lots platted below high water-mark. Since the plats and deed were made, a harbor line has been established by the General Assembly, running outside of said lots and in front of them; and the bill alleges that doubts have arisen as to whom the land between the water line or westerly line of said lots and the harbor line now belongs, and whether or not it forms a part of the trust estate, — questions as to which it is of great importance that the trustee should have the advice and instruction of the court before said lots are sold, as affecting their value. The bill prays instruction thereon. The master, to whom the cause was referred to ascertain whether the sale is necessary or expedient, also reports that it is important that this question should be decided before the sale, in favor of which he reports, is made.

We do not think a bill for instructions is a proper proceeding for settling a disputed title or claim to real estate, if indeed it can be conclusively settled on such a bill. But we can nevertheless instruct the trustee in regard to selling it for reinvestment, and, in that view, may, we think, without impropriety, inasmuch as the question has been submitted to us without dissent, express our opinion.

In this state, at common law, the fee of the soil in tide waters below high water-mark is in the state. It is true the riparian proprietor may fill out in front of his land, but, if he does so, he fills out by the permission or acquiescence of the state, — the establishment of a harbor line being at the least equivalent to such a permission expressly given. Indeed, the Harbor Line Act referred to in this case does, in so many words, recognize the right to fill out to the line. When therefore Tristam Burges, previous to the establishment of a harbor line, conveyed lots which extend to or below high water-mark, he left nothing in front of the lots so conveyed which belonged to him, or which his heirs could inherit from him, the fee of the soil in front of the lots being in the state. The fact that the lots are defined by strict boundary lines is of no consequence; for, if the grantee fills out in front of them, he will do so not under the deed, but by virtue of his

riparian ownership, and he will take the land so filled not from Tristam Burges or his heirs or devisees, but from the state. If, however, any part of the western line of the lots does not extend to high water-mark, but leaves a strip or margin, between it and high water-mark, such strip or margin, having never been conveyed to the trustee, belongs to the heirs or devisees of Tristam Burges, and they, not the trustee, are entitled by virtue of their riparian ownership to fill out to the harbor line. The decision of this court in the unreported case of *Manchester* v. *Hudson*[1] is, we think, in accordance with these views.

We will therefore instruct the trustee, in selling for reinvestment, not to sell any shore lot for a price below what he would sell it for, upon the supposition that the purchaser will be at liberty to fill out to the harbor line any part of such lot which extends to or below high water-mark; and, if he cannot procure purchasers upon such terms, to sell only upland lots, until he has further orders or instructions from the court.

We wish to say in conclusion that this opinion is given in view of the facts, that the harbor line was established after the execution of the trust deed, and that no lots are platted outside of any lot conveyed by that deed, which lot extends to or below high water-mark. If these facts or any of them were different, other questions might arise which would demand consideration.

*Decree accordingly.*

*James Tillinghast & James G. Markland*, for complainants.
*Charles H. Parkhurst*, for respondents.

---

[1] See Records Supreme Court Providence Co., vol. 22, pp. 19. 14; Declarations, No. 1899; Exceptions, No. 245. Oct. Term, 1867. See also *ante*, pp. 214–224.