DECISION
In this action appellant Meredith Sirois claims that the Narragansett Zoning Board of Review (the "Board") erred when it denied her application for a special use permit and a dimensional variance on August 12, 1999. This court disagrees.[1]
 FACTS AND TRAVEL
Appellant, the owner of oceanfront property on Major Arnold Road in Narragansett, sought to construct a single family home thereon, as well a revetment wall to prevent potential shoreline erosion. The property is included in a development denominated Fort Nathaniel Greene, which was platted by Shore Line Inc. in 1965. The plat was divided into 37 consecutively numbered lots, with an additional lot labeled "Lot A" and described as the Community Parking Lot. Appellant's property was originally described as Lot A, which she had purchased 1994 for $43,000.
Because the appellant's property is located on the coastline, the property is within the purview of the Rhode Island Coastal Resources Management Council ("CRMC"). In its preliminary determination on January 2, 1998, the CRMC found that appellant would need to obtain a special exception to construct the revetment wall, and stated that "since a special exception requires a `compelling public purpose,' it is unlikely that a special exception could be obtained." As to the construction of the house, the CRMC further found: "It appears the dwelling cannot accommodate even the minimum 50' setback required by RICRMP Section 140 (an 8' setback is shown on the submitted plan). It is unlikely the project would be approved with an 8' setback." On July 16, 1998, the town of Narragansett, Department of Building Inspectors, also denied the appellant's application for a building permit, indicating that she needed a variance from the Narragansett Zoning Board of Review.
On July 8, 1998, the appellant filed an application requesting: (1) a variance from Chapter 731, § 6.4 dimensional regulations; (2) a variance and special use permit under § 4.4 Coastal Resources Overlay District;[2] and (3) a special use permit under § 4.7 Special Flood Hazard Overlay District under the town of Narragansett Zoning Ordinance ("Zoning Ordinance").[3]
The Board held a public hearing on June 10, 1999, and rendered a unanimous decision denying the application on August 12, 1999. At the hearing the Board heard testimony from representatives of both sides about the impact of the proposed project on property values, the environment, as well as possible beneficial uses of the property. Several neighboring property owners, including the remonstrant, Abram Rosenfeld, testified to their use of the property over the years, and to the fact that they believed the appellant's property would remain undeveloped when they purchased their property.
In denying the application, the Board noted that it was authorized under § 12.5 of the Zoning Ordinance to grant a special use permit together with the grant of a variance from the dimensional setbacks incorporated in the development standards of § 4.4.5 of the Zoning Ordinance. Appellant, however, also sought a dimensional variance from intensity regulations contained in § 6.4 of the Zoning Ordinance with respect to required setbacks for front yards. Therefore, the Board held that the applicant was "required to obtain a use variance in order to locate the structure within 15' of the front yard line, since the relief being sought is for a Special Use permit together with Dimensional Variance." The Board also found that construction of the proposed revetment wall was prohibited by the CRMC, absent a compelling public purpose which provides benefit to the public as a whole, as opposed to individual or private interests. See CRMC Sec. 130(1). In its decision the Board stated, "The applicant has not introduced any evidence that it can establish a public purpose of any kind for the subject property notwithstanding the substantial evidence in this record of the long standing usage of the parcel by members of the public."
The Board further noted that even if the CRMC were somehow persuaded to approve the construction of the revetment wall, appellant had failed to meet all of the requirements of § 4.4. of the Zoning Ordinance, because she "did not present sufficient evidence that significant erosion problems would not occur which could injure surrounding areas including the drainage easements located along the northern boundary of the property." The Board further held that appellant had failed to sustain her burden of proving the loss of all beneficial uses of the property, noting that there were other beneficial uses for the property. Finally, the Board held that granting the application would potentially harm and injure surrounding properties and that appellant had failed to meet all of the requirements of the Zoning Ordinance as intended in the Comprehensive Plan.
 Standard of Review
General Laws section 45-24-69(D) guides this court in its review of the zoning board of review's decision:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This court must determine whether substantial evidence exists in the record to support the Board's decision. Salve Regina College v. ZoningBd. Of Review, 594 A.2d 878, 880 (R.I. 1991). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance." Caswell v. GeorgeSherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 824-5 (R.I. 1978)). This court is not permitted to substitute its judgment for that of the Board. It is obliged to uphold the Board's decision if it is supported by substantial evidence in the record. Mendonsa v. Corey,495 A.2d 257 (R.I. 1985).
 Dimensional Variances and Special Use Permits
Appellant argues that the Board erred in applying the use variance burden instead of the dimensional variance burden. Under § 12.5 of the Zoning Ordinance, the Board has the authority to grant a special use permit together with a grant of a variance from the dimensional setbacks incorporated in the development standards of the Coastal Resources Overlay District.
The CRMC was created in 1971 to serve "as the principal mechanism for management of the state's coastal resources." G.L. § 46-23-1(c). That agency is charged with the primary responsibility of "planning for and management of the resources of the state's coastal region." G.L. §46-23-6. The Legislature, recognizing that the "coastal resources of Rhode Island . . . are of immediate and potential value to the present and future development of this state," instituted a policy order
 "to preserve, protect, develop, where possible, restore the coastal resources of the state for this and succeeding generations through comprehensive and coordinated management designed to produce the maximum benefit for society from these coastal resources." G.L. § 46-23-1(a).
Pursuant to its enabling legislation, the CRMC is vested with the authority to "issue, modify or deny permits for any work in, above, or beneath the areas under its jurisdiction, including conduct of any form of aqua culture," as well as the power to "grant licenses, permits and easements for the use of coastal resources which are held in trust by the state for all its citizens . . . ." See G.L. §§ 46-23-6(2)(i),46-23-6(4)(i), 46-23- (6)(4)(iii). The Rhode Island Supreme Court addressed the extent of the CRMC `s jurisdiction in Town of Warren v.Thornton-Whitehouse 740 A.2d 1255, 1260 (R.I. 1999), holding that the CRMC had exclusive jurisdiction over residential wharves and tidal waters beginning at the mean high-water mark. The Court, however, stated that its holding "in no way limits or restricts the traditional zoning power of municipalities. . . . The CRMC must still defer to local zoning regulation for all projects that extend above the mean high-water mark into the uplands." Id.
Section 120(c) of RICRMP outlines the concurrent jurisdiction between the CRMC and the local zoning boards:
 "Prior to requesting approval for a CRMC variance, in those instances where a variance would be obviated if a variance for a setback were acquired from the local municipality, the applicant must first exhaust his remedies before the local municipality."
Section 12.5 of the Zoning Ordinance provides:
 "The zoning board of review may not grant a special use permit unless it finds the following:
 (1) That the use will comply with all applicable requirements and development and performance standards set forth in Sections 4 and 7 of this ordinance; except that the board may grant a variance from dimensional setbacks incorporated in the development standards of section 4.3.4 of the coastal and freshwater wetlands overlay district, and section 4.4.5 of the coastal resources overlay district, in accordance with the requirements of Section 11 of this ordinance."
In July of 1998, appellant filed for a dimensional variance and special use permit under § 4.4. The special use permit was required given the location of the property in the Coastal Resources Overlay District. Because of the size of the lot, however, appellant also needed a variance from the 200' setback requirement from the coastline. Section 12.5 provides the Board with discretion to grant a special use permit and a variance from the setback requirement. These requests, however, were made in conjunction with a request for a dimensional variance for the front yard setback under § 6.4 of the Zoning Ordinance. That ordinance mandates a 25' setback for a single family home on the appellant's lot. Because of the small size of the lot and its proximity to the coastline, appellant requested a 10' variance from that requirement.
The Board correctly concluded that appellant could not obtain special use permits under § 4.4 and § 4.7, together with a dimensional variance under § 6.4. The Rhode Island Supreme Court has held that unless an ordinance otherwise provides, dimensional variances cannot be granted in conjunction with the issuance of a special-use permit. "The ordinance is unambiguous and imperative in requiring that a special use meet all the criteria authorizing such special use." Newton v. ZoningBoard of Review of City of Warwick, 713 A.2d 239, 242 (R.I. 1987). In this case, the appellant sought a special use permit under § 4.4(b) and § 4.7(c) together with a variance of the setback requirements under § 6.4. Section 11.6 of the Narragansett Zoning Ordinance provides:
 "A dimensional variance is defined as permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after relief is granted shall not be grounds for relief."
In Newton, the court analyzed the same type of language under the Warwick Zoning Ordinance and concluded that "the terms of this portion of the statute would unequivocally command that a dimensional variance be granted only in connection with the enjoyment of a legally permitted beneficial use, not in conjunction with use granted by special permit."Id. at 242.
Appellant claims that Newton is inapplicable because "Sirois' request for a dimensional variance is in conjunction with a legally permitted beneficial use of the property." Appellant differentiates between the "use" of the house and the "construction" of the house, arguing that it is the construction of the house that requires the special use permit and not the use.
The appellant's proposal calls for the construction of a new house, not the use of an already existing one. Although the use of a house may be a legally permitted beneficial use, on this specific lot the construction of a house and the erection of a revetment wall are not. Both projects require a special use permit because of the location of the lot in Coastal Overlay District and a Special Flood Hazard Overlay District. Appellant applied for a special use permit under § 4.7, the Special Flood Hazard Overlay District and for a special use permits under § 4.4 and § 4.7, in conjunction with a dimensional variance under § 6.4. Consequently, the Board's denial of appellant's request was not in error and is consistent with Newton.
 Rhode Island Coastal Resource Management Council and the Revetment Wall
Appellant also argues that the Board erred in the standard it applied for granting the special use permit for construction of the revetment wall. During the public hearing witnesses for both sides agreed that the property had suffered from significant shoreline erosion because of the lack of a revetment wall. The Board, however, found:
 "The construction of the proposed revetment wall is prohibited by the Coastal Management Council absent a compelling public purpose which provides benefit to the public as a whole as opposed to individual or private interest. Rhode Island Coast Resources Management Council Sec. 1030(1) The applicant has not introduced any evidence that it can establish a public purpose of any kind for the subject property notwithstanding the substantial evidence in this record of long-standing usage of this parcel by members of the public." Decision Letter, paragraph 12.
Appellant argues that the Board made a clear mistake by requiring the CRMC's higher standard, instead of the burden of proof required by the Zoning Ordinance. Furthermore, she argues that if the Board had granted the relief, appellant was prepared to go before the CRMC to meet the higher burden of proof.
 Section 4.4(B) of the Zoning Ordinance states:
 "the zoning board of review may grant a special use permit following site plan review and approval for the following activities in the coastal resources overlay district, provided that the proposed project or activity complies with all applicable development standards and other requirements imposed by this ordinance and by the State Coastal Resources Management Council."
In its initial determination, the CRMC denied appellant's application and stated that she would need a special exception under RICRMP, Section 130, to build the wall: "Since a special exception requires a `compelling public purpose,' it is unlikely that a special exception could be obtained." In its decision the Board found that "the applicant has not submitted evidence that it can meet the requirement of Rhode Island Resources Management Council in order to obtain the special exception required in order to construct the revetment well; and the applicant has not demonstrated that she can comply with all requirements imposed by the State Coastal Resources Management Council." In analyzing whether or not the project can comply with the CRMC's standards, the Board followed the standards set out in § 4.4 of the Zoning Ordinance. Before it can grant a special use permit, an applicant must meet all of the standards set out by the zoning ordinance as well as by the CRMC. Appellant did not do so.
Furthermore, the Board's denial was not based simply on the CRMC's standard for an exception under RICRMP, Section 130. It also found that the appellant had not complied with all of the standards set out in the Zoning Ordinance, § 4.4, itself. The Board found:
 "[I]n the event that the State Coastal Resources Management Council approves construction of the revetment wall, the applicant did not present sufficient evidence that significant erosion problems would not occur which could injure surrounding areas including the drainage easement located along the northern boundary of the property. Failed to meet all requirements of section 4.4 of the ordinance." Decision Letter,
Paragraph 16.
Consequently, the Board based its decision on appellant's failure to meet the requirements imposed by the Zoning Ordinance and by the CRMC. That conclusion was not erroneous.
 Conclusion
After a review of the entire record, this court finds that the Board's decision in its entirety is supported by reliable, probative, and substantial evidence in the record, is not in excess of the authority granted to it by statute or ordinance, and is not affected by error of law. The decision is not in violation of constitutional, statutory or ordinance provisions or made upon unlawful procedure, is not arbitrary, capricious, or characterized by an abuse of discretion. Substantial rights of the appellant have not been prejudiced.
Accordingly, the decision of the Board is affirmed.
[1] This court has jurisdiction pursuant to G.L. 1956 § 45-24-69; per order of Presiding Justice Rodgers, this case was transferred from Washington County to Providence for assignment and disposition.
[2] The Zoning Ordinance defines a Coastal Resource Overlay District as composed of (i) tidal waters and coastal salt ponds; (ii) shoreline features including coastal beaches and dunes, barrier beaches, coastal cliffs, bluffs, and banks, rocky shores, and manmade shorelines; and (iii) areas contiguous to shoreline features extending inland for two hundred (200) feet ("contiguous areas"), as these lands and waters are defined by the state coastal resources management council. Coastal resources have great and varied commercial, industrial, recreational, and aesthetic values which are threatened with destruction by unplanned and poorly planned development. It is the public policy of Rhode Island and the town to preserve, protect, develop, and restore coastal resources and their ecological systems in the interest of public health, safety, and general welfare of the community." Zoning Ordinance, § 4.4.
[3] The Special Flood Hazard Area Overlay District contains "special flood hazard areas, including floodways and coastal high hazard areas. Special flood hazard areas are subject to recurrent flooding which presents serious hazards to the health, safety, welfare, and property of the residents of the Town of Narragansett. Regulation of the development and alteration of such areas is thus in the public interest. Zoning Ordinance § 4.7.