DECISION
Before this Court is Mary Ziepniewski's (Appellant) appeal of the April 19, 2006 decision of the Coastal Resources Management Council (CRMC), which granted Henry and Sheila Kelly Gediman's (Appellees) application for a variance to construct a residential boating facility. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
The Appellant's home is situated on a parcel of land abutting the Sakonnet River in Tiverton, Rhode Island. The Appellees are owners of two nearby parcels: the first, an undeveloped lot, shares a property line with Appellant and abuts the Sakonnet River to the west and Main Road to the east. Directly across Main Road is Appellees' second property, on which sits a seasonal home. Appellees wished to build a residential boating facility — in this case, a dock — extending from their waterfront parcel, forty-five feet beyond the mean low water mark, into the Sakonnet River.
Because their waterfront lot is only thirty feet wide, the proposed dock would stand eleven feet from the property lines of Appellees' northerly and southerly neighbors. The *Page 2 
CRMC's regulations mandate that a variance is necessary if a proposed residential boating facility will stand less than twenty-five feet from a neighbor's property line. See Rhode Island Coastal Resources Management Program (CRMP) § 300.4.E.3.k. Only when the abutters provide "letters of no objection" may the CRMC grant an assent, without the need of considering the variance criteria, to such a proposal. See CRMP §§ 300.4.C; 300.4.E.3.k. Here, the Appellees did not receive "letters of no objection" from their neighbors. Accordingly, the Appellees applied to CRMC for a variance on March 23, 2005.
On March 28, 2006, the CRMC held a duly noticed public hearing on Appellees' application. At the hearing, CRMC's environmental scientist, David Reis, noted that the purpose of the twenty-five foot setback requirement is to "allow appropriate navigation to and from a facility." (Tr. at 32-33.)
In support of the application, Herbert Sirois, a registered professional engineer, testified that the need for a variance was not the result of Appellees' actions; rather it was the nature of their lot, being thirty feet wide, which made it impossible to construct the proposed facility without a variance. Id. at 29-30. Further, he testified, the requested variance was the minimum possible deviation from the standard. Id. at 29. And, although the proposed dock would stand eleven feet from the property line, the distance between it and the Appellant's existing dock would be fifty-four feet. Id. at 30. As a point of comparison, Mr. Sirois testified, the distance between docks in a typical marina is "approximately 24 feet." Id. at 31.
The Appellant then testified on her own behalf, expressing concern that Appellees' proposed dock would stand too close to her own dock, especially if she expanded it, as she had planned, making the total distance between them twenty-eight to thirty-two feet. Id. at 34, 49-50. She also testified that Appellees' proposal would reduce the level of privacy she enjoys, and that *Page 3 
the pile driving necessary to construct Appellees' dock would cause structural damage to her house. Id. at 35, 38. Appellant's professional engineer, Joseph Hanlon, testified and also argued that structural damage could result from nearby pile driving and that Appellant's privacy would be minimized. Id. at 39-41.
The southerly abutter, Malcolm Compton, also opposed Appellees' application. Id. at 53-54. However, Mr. Compton did not appear at the hearing; instead, his property manager, Chee Lauriano, was present.Id. The Council did not hear Ms. Lauriano's testimony, stating it was against the CRMC's rules to allow someone other than the landowner, the landowner's family member, or the landowner's attorney to testify.Id. at 55-56.
At the conclusion of the hearing, the CRMC voted to approve Appellees' application. Id. at 61. A written decision was filed on April 19, 2006. Dissatisfied with this result, Appellant has appealed to this Court.
 II Standard of Review
Pursuant to the Rhode Island Administrative Procedures Act, G.L. 1956 § 42-35-1 et seq., when reviewing the decisions of an administrative agency such as the CRMC, this Court sits as an appellate court with limited scope of review. Mine Safety Appliances Co. v. Berry,620 A.2d 1255, 1259 (R.I. 1993). The standard of review is codified, as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law; *Page 4 
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Section 42-35-15(g).
Accordingly, this Court is confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory SurgicalAssoc., Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quotingBarrington Sch. Comm. v. Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)). "[L]egally competent evidence" is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Ctr. For Behavioral Health,Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998). If this Court determines that in making its decision the agency did, in fact, rely upon "legally competent evidence," the agency's factual findings must be affirmed. See Nolan, 755 A.2d at 805.
Agency decisions on questions of law, however, are not binding on this Court. Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1,6 (1977). Questions of law may be reviewed to determine what the law is and its applicability to the facts. Id.
 III The CRMC's Enabling Statute and AdministrativeRegulations
Neither party disputes the CRMC's jurisdiction over the Appellees' application. Indeed, the CRMC's primary responsibility, as established by the General Assembly, is "the continuing planning for and management of the resources of the state's coastal region." Section 46-23-6. Accordingly, the CRMC is "authorized to approve, modify, set conditions for, or reject" any proposed "development or operation within, above, or beneath the tidal water below the mean high water mark," within certain statutory limits. Section 46-23-6; Town of Warren v.Thornton-Whitehouse, *Page 5 740 A.2d 1255, 1260 (R.I. 1999). Pursuant to its statutory authority, the CRMC has promulgated regulations, entitled "The Rhode Island Coastal Resources Management Program" (CRMP), which, like all agency regulations promulgated pursuant to a statute's express delegation to do so, have the "`force of law.'" See Henry v. Earhart, 553 A.2d 124, 127 n. 1 (R.I. 1989) (quoting Lerner v. Gill, 463 A.2d 1352, 1358 (R.I. 1983)).
Moreover, the CRMC has established regulations governing that which is at issue here: a residential boating facility. See CRMP § 300.4.C.2; 300.4.E.3. Though riparian land owners once had a common-law right to wharf out, fettered only by the corresponding rights of others, that right is today limited by the CRMC's enabling statute, requiring a land owner to gain CRMC approval before wharfing out. SeeThornton-Whitehouse, 740 A.2d at 1259.
In the present case, the Sakonnet River waters into which Appellees' proposed dock will extend are classified by the CRMP as "Type 3"; that is, "High-Intensity Boating" waters. See CRMP § 200.3; (Dec. at 1). The CRMP permits construction of a residential boating facility into such waters provided CRMC approval is given by either Category A or Category B assent or a variance to a particular standard is granted.See CRMP Table 1.
Category A assent is an administrative review of a petitioner's application which does not require public notice and a hearing by the full Council; rather, if the proposal meets certain listed criteria, it is considered a "routine matter" that can be granted by the executive director or, as is the case for residential boating facilities, a subcommittee designated to act on the director's behalf. CRMP §§ 110.1.A; 300.4.C.2.b. Included as eligible for Category A administrative review are "[r]esidential docks less than 200 feet (MLW) in length in the Sakonnet River" — precisely the source of the present controversy.See CRMP § 110.C. If the applicant's proposal is in compliance with the standards enunciated in §§ 300.4.C.2 and 300.4.E.3, a Category A *Page 6 
assent would be proper.
Here, the Appellees could not satisfy § 300.4.E.3.k, which requires a "letter of no objection" from an abutting landowner affected by a proposed residential boating facility that will stand less than twenty-five feet from the property line. Because the Appellant did not provide such a letter, and, as § 300.4.C.2 states, a variance to § 300.4.E.3.k cannot be given by the subcommittee reviewing a Category A application, it became necessary for the CRMC to treat the proposal as a Category B application.
A Category B assent is of a more stringent nature than the more routine Category A assent because, in addition to the requirement of public notice and a full Council hearing, an applicant must satisfy the eleven requirements of CMRP § 300.1, as well as those of § 300.4.E.3, to gain the proper approval to construct a residential boating facility. However, again, the Appellees here could not satisfy 300.4.E.3.k, and therefore, the full Council, reviewing the proposal as a Category B application, would need to consider granting a variance, relying on the variance criteria set out in CRMP § 120. Accordingly, the CRMC's decision to treat Appellees' proposal as a Category B application was not made upon unlawful procedure. See § 42-35-15(g)(3).
 IV Review of the CRMC Decision
Here, Appellant contends that the CRMC has exceeded its statutory authority by granting Appellees' variance despite her objection. Secondly, Appellant argues, the CRMC did not consider legally competent evidence regarding whether the Appellees would suffer undue hardship in the absence of a variance and that none of the Category B application requirements (CRMP § 300.1) were properly addressed. *Page 7 
 A Statutory Interpretation
Appellant contends that the CRMC exceeded its statutory authority when it granted Appellees' petition for a variance without a "letter of no objection" from Appellant, an abutting property owner. (Appellant's Br. at 6-7.) Specifically, Appellant cites CRMP § 300.4.C (Recreational Boating Facilities — Prerequisites), which states in relevant part:
 All [recreational boating facility] structures shall be a minimum of twenty five (25) feet from the property line extension. Otherwise the applicant shall have a letter of no objection from the adjacent property owner stating that the reduced setback is acceptable. This letter and variance request shall be provided with the application.
In addition, Appellant cites CRMP § 300.4 E.3 (Residential Docks, Piers, and Floats standards), specifically subsection (k), which states:
 Residential boating facilities shall not intrude onto the area within twenty five (25) feet of an extension of abutting property lines unless (1) it is to be the common structure for two or more adjoining owners, concurrently applying or (2) a letter or letters of no objection from the affected owner or owners are forwarded to the CRMC with the application. In the event the applicant must seek a variance to this standard, the variance request must include a plan prepared by a RI registered Land Surveyor which depicts the relationship of the proposed facility to the effected [sic] property line(s) and their extensions.
Based upon these foregoing provisions, Appellant argues that the CRMC cannot grant a variance from the twenty-five foot setback requirement without a "letter of no objection" from adjacent landowners. Thus, because Appellant provided no such letter, she argues that the CRMC violated its own regulatory provisions in granting the Appellees' application.
Appellant's argument is misplaced. What Appellees seek is a residential boating facility in "Type 3" waters. As the CRMP provides, a residential boating facility is not a prohibited structure in such waters, and CRMC approval can be had by either Category A or Category B *Page 8 
assent. See CRMP Table 1. However, as also noted above, Category A and Category B assent were impossible in this case, unless the CRMC granted a variance (CRMP § 120), because of Appellant's objection.
Appellant seems to suggest, however, that the CRMC cannot grant a variance from the standard of § 300.4.E.3.k: that one cannot build a residential boating facility less than twenty-five feet away from a property line if an abutter objects. Yet, CRMP § 300.4.C.2.g states clearly that "[v]ariances may be granted to all of the standards contained in Section 300.4.E.3 Standards for Residential Docks, Piers and Floats." This section is qualified only by CRMP § 300.4.C.2.g(1), which holds that "the subcommittee [the body designated to decide Category A assents] may not grant a variance to Section 300.4.E.3.k." Thus, only the full Council, reviewing the application under the requirements of Category B, can grant the variance that Appellees seek here. Also, by a full reading of CRMP § 300.4.E.4.k, one notices that the sentence, following that which sets out the standard, begins: "In the event the applicant must seek a variance to this standard. . . ." (Emphasis added.) These sections demonstrate that the standard at issue here is not absolute; the CRMC may grant a variance, pursuant to CRMP § 120. Further, the Court must give deference to an administrative agency's interpretation of its own regulations. See In re AdvisoryOpinion to the Governor, 732 A.2d 55, 76 (R.I. 1999).
In sum, Appellees' proposed dock, less than twenty-five feet from the property line, and without a "letter of no objection" from Appellant, failed to meet the requirements of CRMP § 300.4.E.3.k. Accordingly, they required, and sought, a variance from that standard. The CRMC complied with its regulations, and thus did not act in excess of its statutory authority when it considered Appellees' application as a Category B application and granted a variance according to the criteria of the section governing variances: § 120. *Page 9 
 B Substantial Evidence
The Appellant argues that the CRMC granted Appellees' application without substantial evidence in the record. Specifically, she argues, (1) the Appellees did not demonstrate that they would suffer an undue hardship without a variance to the twenty-five foot setback requirement, and (2) that the requirements of CRMP § 300.1, necessary for a Category B assent, were not properly addressed.
 1 Undue Hardship
For the CRMC to grant a variance, it must be satisfied that the applicant has met the following requirements:
 (1) The proposed alteration conforms with applicable goals and policies in Parts Two and Three of the [CRMP].
 (2) The proposed alteration will not result in significant adverse environmental impacts or use conflicts, including but not limited to, taking into account cumulative impacts.
 (3) Due to conditions at the site in question, the applicable standard cannot be met.
 (4) The modification requested by the applicant is the minimum variance to the applicable standard necessary to allow a reasonable alteration or use of the site.
 (5) The requested variance to the applicable standard is not due to any prior action of the applicant or the applicant's predecessors in title. . . .
 (6) Due to the conditions of the site in question, the standard will cause the applicant an undue hardship. . . . CRMP § 120.A.
Specifically, Appellant points to CRMP § 120.A(6), which required the Appellees to demonstrate that, due to the conditions of their property, the twenty-five foot setback standard caused an "undue hardship." It is Appellant's contention that "[n]o evidence" was presented on *Page 10 
the issue of "undue hardship," which should be defined, she argues, as it is in certain zoning cases: one's being deprived of all beneficial use of the property. (Appellant's Br. 7.)
However, the standard the CRMC is to apply when considering an applicant's evidence of "undue hardship" is provided in § 120.A(6):
 In order to receive relief from an undue hardship an applicant must demonstrate inter alia the nature of the hardship and that the hardship is shown to be unique or particular to the site. Mere economic diminution, economic advantage, or inconvenience does not constitute a showing of undue hardship that will support the granting of a variance.
Accordingly, instead of a showing that a denial of a variance would deprive them of all beneficial use, the Appellees were required to demonstrate that, because of the nature of their property, the denial of a variance would result in more than "[m]ere economic diminution, economic advantage, or inconvenience."[1]
Substantial evidence exists in the record for the CRMC to reasonably find undue hardship, as defined by the CRMP, on the part of the Appellees. Appellees' professional engineer testified that because of the width of the lot, thirty feet, it would be impossible for Appellees to meet the twenty-five foot setback requirement. (Tr. at 29.) Appellees, then, could not exercise their common-law right, as limited by the CRMP, to wharf out. See Thornton-Whitehouse, at 740 A.2d at 1259
(holding that a riparian landowner's common-law right to wharf out is today limited by the CRMC's regulations). It was reasonable for the CRMC to find that restraining Appellees from wharfing out created an undue burden; that is, it was more than *Page 11 
"mere economic diminution, economic advantage, or inconvenience."See CRMP § 120.A(6).
Furthermore, substantial evidence exists in the record to support the remaining five requirements of § 120.A. First, the expert agency could have reasonably determined, based on evidence in the record, Appellees' proposed dock conformed with the CRMP's "applicable goals and policies."See CRMP § 120.A(1). CRMC's supervising engineer noted that the purpose of the twenty-five foot setback was to "allow appropriate navigation to and from a facility." (Tr. at 32-33.) Additionally, Appellees' engineer testified that the distance between the two neighbors' docks would be fifty-four feet, while as Appellant's engineer conceded, marinas typically have a distance between docks of twenty-four feet.[2] (Tr. at 30, 50). Also, as to environmental effects, Appellees' engineer noted, in an April 24, 2005 letter to the CRMC, his belief that no "significant adverse cumulative environmental impacts" would result from the proposed facility. (R. at 25.) Finally, the Appellees' engineer also testified that the conditions of the lot, being only thirty feet wide, made the standard impossible to meet, that the need for a variance was not the result of Appellees' prior actions or those of their predecessors, and that the proposed facility is the minimum possible variance. See CRMP § 120.A(3), (4), (5); (Tr. at 29-30).
Accordingly, the record contains substantial evidence that a reasonable mind could accept as adequate to support the CRMC's decision on the § 120.A criteria. See Barros, 710 A.2d at 684. The CRMC's decision is therefore not arbitrary, capricious, or clearly erroneous in view of the record evidence. See § 42-35-15(g)(5), (6). *Page 12 
 2 CRMP Section 300.1
Appellant also argues that the CRMC lacked sufficient evidence to grant Appellees' application because Appellees did not address, in writing, the requirements of CRMP § 300.1 (Category B Requirements). The record evidence demonstrates that although Appellees did not provide one overall document addressing each of the requirements, the CRMC's finding that the several documents attached to their application did not constitute unlawful procedure. See Barros, 710 A.2d at 684.
With respect to the "writing requirement," Appellees provided the letter of their engineer addressing the need for the variance based on the size of the lot, and, additionally, the lack of environmental impact that would result from the proposed dock See CRMP § 300.1(1), (4) — (8), (11); (R. at 25-26). This exhibit would serve to satisfy the "writing" requirement of § 300.1(1), (4) — (8), (11), and from them, CRMC could reasonably conclude the Appellees made a sufficient showing that they have met the requisite criteria.
Additionally, Appellees supplied a letter from the Rhode Island Historical Preservation and Heritage Commission, noting that the "proposed project will have no effect on any significant cultural resources." (R. at 42.) Also, Appellees demonstrated through letters of approval from the United States Army Corps of Engineers and the Rhode Island Department of Transportation that all applicable building and safety codes were to be complied with. (R. at 28-29, 40-41.) Each satisfied the "writing" requirement of § 300.1(2), (9). The CRMC, therefore, could have reasonably concluded that the Appellees satisfied these respective criteria.
Finally, Appellees' various diagrams and maps of the facility and its location satisfy the "writing" requirement of § 300.1(3), (10). (R. at 13-22, 30-34, 48, 50.) These documents *Page 13 
reasonably describe the area to be affected and, from them, the CRMC's determination that the facility would not conflict with navigation and other "water-dependent uses" was not clearly erroneous. See CRMP § 300.1(3), (10). Accordingly, the CRMC's decision is supported by reliable, probative, and substantial evidence in the record.See § 42-35-15(g)(5).
 Conclusion
After a review of the entire record, this Court finds that the CRMC's granting of Appellees' application for a variance was neither in violation of its statutory authority, nor was it clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Moreover, substantial rights of the Appellant have not been prejudiced. The CRMC's decision is therefore affirmed.
Counsel shall prepare an appropriate judgment for entry.
[1] As Appellees correctly note, even if the Court were to accept Appellant's argument to apply zoning law to the instant appeal, the situation here is analogous to a dimensional variance, which requires an applicant to show only that a denial would amount to more than a mere inconvenience. See Sako v. Delsesto, 688 A.2d 1296, 1298 (R.I. 1997). The burden which Appellant advocates is that which is applied to a use variance. See Lischio v. Zoning Bd. of Review of Town of N.Kingston, 818 A.2d 685, 692 (R.I. 2003).
[2] Also at the hearing, Appellant indicated that she planned to extend her own dock, which would make the distance between both docks somewhere between 28-32 feet. (Tr. at 30, 49-50.) Nevertheless, based on the evidence presented, it was reasonable for the expert agency to consider that possible distance sufficient.