**In re Paul K. SHERMAN.**

**No. 87–260 Appeal.**

Supreme Court of Rhode Island.

Nov. 9, 1989.

Lauren E. Jones, Joes & Aisenberg and Thomas Hutton, Hutton Law Associates, Ltd., Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Robin E. Feder, and David D. Prior, Asst. Attys. Gen., for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

MURRAY, Justice.

This case is before the court on appeal by the defendant, the State of Rhode Island, from a November 19, 1987 order of the Superior Court granting the estate of Paul K. Sherman pre- and postjudgment interest on an April 22, 1987 judgment rendered against the State in a civil suit. The defendant also appeals a November 19, 1987 order of the Superior Court allowing the guardian ad litem's attorney to collect a fee of 45 percent of the gross verdict. We find that the April 22, 1987 order constituted a final judgment and is therefore, reinstated without the additional interest. We also find that the order allowing the guardian ad litem's attorney to collect 45 percent of the gross verdict rather than 45 percent of the actual judgment is unreasonable as a matter of law.

The issues at bar arise from the culmination of three Superior Court cases. On May 24, 1983, Hope Sherman filed a petition in the Superior Court to be appointed guardian ad litem of her son, Paul K. Sherman, for the purpose of pursuing a civil action for damages against the State of Rhode Island. Paul K. Sherman (Paul) remains in a persistent vegetative state after attempting suicide while in the custody of the State at the Adult Correctional Institutions. On May 31, 1983, the trial justice entered an order appointing Hope Sherman guardian ad litem. Ms. Sherman thereafter filed a civil tort action against the State of Rhode Island on June 28, 1983. Meanwhile, the General Assembly passed a private act allowing Ms. Sherman to recov-

er up to $1 million. 1984 R.I. Acts & Resolves 130, May 17, 1984. The General Assembly later passed a private act allowing her to recover $3 million, in excess of the $100,000 limitation. 1985 R.I. Acts & Resolves 143, June 28, 1985.

A trial was held before another trial justice and jury in 1987. The jury returned a verdict against the State, and the justice amended the judgment from $1,007,000 to $595,527.36 in order to account for medical treatment costs owed to the State. This reduction was performed pursuant to 1985 R.I. Acts & Resolves 143, § 3 June 28, 1985, which required "if judgment is rendered against the state the value of any and all hospital and medical services rendered by it to the claimant shall be deducted from such judgment." The trial justice also denied plaintiff's claim for prejudgment interest because the private act did not specifically allow it. The 1985 act provided that the limitation on recovery of $3 million "shall include any interests and costs," but did not specifically authorize payment of pre- and postjudgment interest, as did the final private act that was approved by the General Assembly on July 3, 1987. Neither party appealed from this judgment and the order became final ten days after judgment was entered on April 22, 1987.[1]

On May 1, 1987, plaintiff filed two motions in the guardianship case in order to clarify and confirm the attorney's-fee arrangement to which she had agreed. On May 19, 1987 the Superior Court entered an order approving the fee agreement as well as authorizing her to make disbursements from the judgment. The state filed a notice of appeal from this order on May 28, 1987.[2]

On June 8, 1987, the Superior Court entered an order consolidating the guardianship case, the tort case, and the interpleader case.[3] While further action was pending the General Assembly passed another private act in 1987, specifically providing for pre- and postjudgment interest on the jury verdict in this case.[4] After this court ordered a limited remand for consideration of certain postjudgment motions on August 31, 1987, a hearing was held in Superior Court on October 26, 1987. The trial justice filed a decision and entered an order on November 19, 1987, providing that the State shall pay pre- and postjudgment interest pursuant to 1987 R.I. Acts & Resolves 187. In addition, the order specified that the registrar shall pay out all attorney's fees and costs. The trial justice sua sponte partially stayed the order pending resolution of the issues raised on appeal.

I

Pre- and Postjudgment Interest

■ We have long held that the court will strictly construe statutes that award interest on judgments against the State. *Andrade v. State*, 448 A.2d 1293, 1294 (R.I.1982); *Gott v. Norberg*, 417 A.2d 1352, 1357 (R.I.1980); *Atlantic Refining Co. v. Director of Public Works*, 104 R.I. 436, 441, 244 A.2d 853, 856 (1968). Under the common law the State has sovereign immunity that may only be waived if such waiv-

1. The clerk of the court automatically entered judgment on April 22, 1987 pursuant to Rule 58(a) of the Superior Court Rules of Civil Procedure. According to Rule 59(b):
   "A motion for a new trial shall be served not later than ten (10) days after the entry of the judgment."
   In addition, Rule 59(e) states:
   "A motion to alter or amend the judgment shall be served not later than ten (10) days after entry of the judgment."

2. At the same time, the State also filed a complaint in the Superior Court seeking an order that the guardian ad litem open a probate estate or alternatively, that the judgment be deposited in the registry of the Superior Court. (Complaint May 28, 1987, C.A. No. 87–2264, hereinafter the interpleader case.) The State of Rhode Island had originally objected to the Superior Court's administration of Paul's assets but has since abandoned the appeal at oral argument. We therefore decline to address the issue of whether the trial justice erred in exercising jurisdiction over the judgment proceeds and partially distributing such funds.

3. The interpleader case is discussed at footnote 2.

4. 1987 R.I. Acts & Resolves 187 introduced on June 11, 1987, was approved by the General Assembly July 3, 1987.

er is deliberate. We therefore presume that the Legislature did not intend to deprive the State of any sovereign power "unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language." *Andrade,* 448 A.2d at 1295 (citing *Brown University v. Granger,* 19 R.I. 704, 36 A. 720 (1897)). This rule of strict statutory interpretation applies with equal force when interpreting a private act that purports to extend the limits of liability. In fact, a private act requires even closer scrutiny than a statute because a private act not only deviates from the common law, but also deviates from the common statutory scheme. If the Legislature intends to expose the State treasury to the additional financial burden of pre- and postjudgment interest, it could easily so provide.

We find that the private act of June 28, 1985, made no provision for pre- and postjudgment interest. The purpose and language of the act was to extend the liability of the State beyond its $100,000 limit and not to provide that interest specifically be awarded. The trial justice was correct in his finding that the language of the 1985 private act did not provide a clear expression of the Legislature's intent to waive the State's immunity from paying interest on the judgment.

The fact that the Legislature later enacted the 1987 act to provide specifically for the payment of interest on the judgment does not change our decision. If the Legislature intends to allow a party to collect interest on a judgment against the State, the Legislature must act *before* the entry of final judgment in order to benefit the intended party.[5] If the court later reconsiders the issue of interest on the judgment, the action is invalid under the doctrine of res judicata. Res judicata serves as an "absolute bar to a second cause of action where there exists identity of par-

ties, identity of issues, and finality of judgment in an earlier action." *Beirne v. Barone,* 529 A.2d 154, 157 (R.I.1987). The basis of the doctrine is that an issue should be judicially determined only once. *Silva v. Silva,* 122 R.I. 178, 184, 404 A.2d 829, 832 (1979). In this case the justice had fully considered the issue of pre- and postjudgment interest when he denied it, and judgment was entered on April 22, 1987. As the judgment became final, res judicata bars reconsideration of the same issues decided in the earlier case.

In the recently decided *Cardi* case, this court allowed the trial court to add interest to a Superior Court judgment. *Cardi Corp. v. State,* 561 A.2d 384 (R.I.1989). Unlike the *Cardi* case, however, the Legislature allowed the Cardi Corporation to collect interest from the State *before* the entry of final judgment. *See id.* at 385.[6] Only before the entry of final judgment is the awarding of interest on a judgment a "ministerial act." *Id.* at 387. Once a judgment becomes final the calculation of interest on the original judgment will not be reconsidered.

We find that the judgment in the instant case became final ten days after the clerk's entry of the judgment on April 22, 1987. Rule 59(e). As the issue of pre- and postjudgment interest was fully considered, and neither party appealed the judgment, the identical issue could not be relitigated.[7]

## II

### Attorney's Fees

The second issue we address is that of the reasonableness of the guardian ad litem's fee agreement with her attorney. We usually decline to address the matter of attorney's fee agreements because they are private contractual arrangements between the parties. In this case, however, we find that closer scrutiny is in order primarily

---

5. We render no opinion on the propriety of the Legislature's enactment of 1987 R.I. Acts & Resolves 187.

6. *Cardi Corp. v. State,* 561 A.2d 384 (R.I.1989), is also distinguishable from the present case in that it involved a contract dispute whereas the

instant case addresses interest on a tort judgment.

7. We decline to address the issue of separation of powers raised in the briefs as the case may be disposed of on a res judicata theory.

because this arrangement involves a guardian ad litem acting on behalf of a third party whose rights are directly implicated by this fee agreement. In light of this fact we must limit the agreement in order to provide for Paul's welfare.

According to the fee arrangement, the guardian ad litem agreed to pay her attorney as follows:

> "If the matter is either settled by agreement during the course of the trial or is resolved by a jury award after the beginning of trial, [the attorney] is to receive forty-five (45%) percent of said settlement amount or jury award."

The plaintiff contends that this agreement entitles her attorney to 45 percent of the gross verdict, that is, the verdict before adjustments were made for medical expenses owed to the State. In other words the guardian ad litem and her attorney agree to an arrangement that entitles the attorney to 76 percent of the net verdict.[8]

We find this conclusion to be unreasonable as a matter of law. If plaintiff's theory were carried to its logical conclusion, the attorney's fee agreement could exceed actual recovery. This would be true if the State were owed only $150,000 more in medical expenses.[9] In considering the figures in this case, we believe the current arrangement jeopardizes Paul's future. The 1985 private act, the jury verdict, and the lawsuit itself were all intended to benefit the incompetent Paul. We fail to see how Paul could benefit from an arrangement wherein the attorney collects more than the individual whose interest and future the attorney is hired to protect.

In addition, we find that the attorney's-fee agreement is inconsistent with the language of the 1985 private act. The act makes clear that although the State waives its limit on liability, the State will not be responsible for Paul's medical expenses. The act does not merely allow for the reduction of medical expenses, it actually determines the scheme for addressing relative liability. The act effectively removes from the jury the responsibility for determining the total liability and requires that the jury only consider half of the equation for determining ultimate liability. Had the jury been entitled to consider the amount of money owed to the State, it is quite probable that the jury verdict would reflect the relative liabilities of the parties involved in the case and set its verdict accordingly. The attorney in this case knew that the jury verdict would be reduced automatically under the 1985 private act by that amount of money owed to the State. The attorney for the guardian ad litem, therefore, cannot enjoy recovery under the 1985 private act while ignoring the realities of the limitations on recovery in the act in setting his fee.

In conclusion, the plaintiff's attorney is entitled to 45 percent of the net verdict: a total sum amounting to $267,987.31. The trial justice's order of November 19, 1987, is vacated and the April 22, 1987 judgment is hereby reinstated. The papers in the case are remanded to the Superior Court.

---

8. An award of 45 percent of the gross judgment, $1,007,000., is $453,150. This figure also amounts to 76 percent of the final judgment of $595,527.36.

9. If the State were owed $150,000 more in medical expenses, then the net verdict would have been $445,527.36. This figure is less than the amount the attorney claims to be entitled to: $453,150. The estate of Paul K. Sherman would then be required to pay the attorney an amount exceeding recovery by $7,622.64 in this hypothetical situation.