Richard L. BIERMAN

v.

Linda SHOOKSTER

v.

CITY OF PROVIDENCE et al.

No. 89–591–Appeal.

Supreme Court of Rhode Island.

May 1, 1991.

Edward L. Gnys, Jr., Gunning, LaFazia & Gnys, Inc., Providence, for plaintiff.

John A. Baglini, Higgins & Slattery, Linda E. Buffardi and James Ruggieri, Higgins, Cavanagh & Cooney, and David Curtin, Providence, for defendants.

## OPINION

FAY, Chief Justice.

This matter is before the Supreme Court on appeal by the plaintiffs, Linda Shookster (Shookster) and Richard L. Bierman (Bierman), from a motion to dismiss entered in the Superior Court in favor of the defendant Stephen Napolitano (Napolitano) as treasurer of the city of Providence (city).[1] The facts of the case relevant to this appeal are as follows.

On January 31, 1983, Shookster and Bierman were involved in an automobile collision. Prior to the accident, Bierman was traveling on Friendship Street in the city of Providence. Because the traffic light controlling the Friendship Street access to the intersection of Friendship and Dyer Streets was green, Bierman continued on Friendship Street through the intersection. There were two traffic-control signals governing the Dyer Street traffic. One of the signals was broken and the other was blocked by an illegally parked truck owned by Ryder Truck Rental, Inc. (Ryder), and operated by National Office Supply Co. (National). When Shookster, who was traveling south on Dyer Street, entered the intersection, her vehicle collided with Bierman's vehicle.

On April 21, 1983, Bierman initiated a civil action against Shookster for injuries sustained in the accident. Shookster, who also suffered damages as a result of the collision, then brought suit against Bierman, Ryder, National, and the city. Bierman answered the complaint and filed a cross-claim against the additional parties named in Shookster's complaint. On June 12, 1986, the complaints were consolidated.

On May 6, 1987, Shookster filed a third-party action against Ryder, National, and the city. Ryder and National filed a counterclaim against Shookster and a cross-claim against the city.

Relying on the public duty doctrine and the immunity afforded governmental entities set forth in *Knudsen v. Hall*, 490 A.2d 976 (R.I.1985), the city moved for summary judgment. The trial justice granted summary judgment, and an order was entered by the Superior Court on November 18, 1987, dismissing the claims against the city. The sole issue before this court, therefore, is whether plaintiffs' claims are barred by the public duty doctrine.

■ The public duty doctrine espoused by this court in *Knudsen v. Hall* creates governmental immunity for those claims arising out of governmental actions that are discretionary in nature. *Id.* at 978–79. An individual may, however, be entitled to recover against the government if he or she is able to establish that he or she was a specifically identifiable victim of the government's negligence. *Id.* In the present case plaintiffs aver that their claims should not be barred by the public duty doctrine because although the placement of an automatic signal light constitutes a discretionary act protected by the public duty doctrine, the maintenance of such a light after installation is not discretionary in nature and thus the public duty doctrine does not apply. Additionally plaintiffs allege that the city's failure to maintain the traffic controls at the intersection created a public nuisance entitling them to recovery.

In *Polaski v. O'Reilly*, 559 A.2d 646, 647 (R.I.1989), we determined that the placement of traffic signals by a municipality is a discretionary action. The present situation, however, goes beyond the placement of traffic signals in that it concerns the maintenance of traffic signals. The issue

---

1. This case originated as a result of a claim made by Bierman against Shookster. Both Shookster's subsequent claim against Bierman and Bierman's cross-claim against Shookster named the city as a defendant. The claims were consolidated. This appeal concerns those claims made against the city, and therefore, for the purposes of this opinion, Bierman and Shookster will be referred to as plaintiffs and the city will be referred to as defendant.

before us compels us once again to examine the scope of the public duty doctrine.

The public duty doctrine has evolved throughout the years as a means of encouraging "the effective administration of governmental operations by removing the threat of potential litigation." *Catone v. Medberry*, 555 A.2d 328, 333 (R.I. 1989). The shield of immunity afforded governmental entities, however, has been substantially dismantled in recent years to afford individuals recourse for tortious injuries suffered as a result of governmental actions. We have determined that the government is liable for its tortious actions in those instances in which the plaintiffs establish that they, as individuals rather than as members of the general public, are owed a special duty. *Verity v. Danti*, 585 A.2d 65 (R.I.1991); *Polaski v. O'Reilly*, 559 A.2d 646 (R.I.1989); *Knudsen v. Hall*, 490 A.2d 976 (R.I.1985); *Orzechowski v. State*, 485 A.2d 545 (R.I.1984); *Ryan v. State Department of Transportation*, 420 A.2d 841 (R.I.1980). In *Catone v. Medberry*, 555 A.2d 328 (R.I.1989), and *O'Brien v. State*, 555 A.2d 334 (R.I.1989), this court recognized additional factors that further limit the immunity created by the public duty doctrine. We determined that the public duty doctrine is only applicable to those situations in which the government or its agent is performing an activity that would not ordinarily be executed by a private individual. *Catone*, 555 A.2d at 333; *O'Brien*, 555 A.2d at 336–37. Recently this court re-examined and further abrogated the public duty doctrine.

In *Verity* despite the fact that ample notification had been provided, the state failed to remove a tree that completely blocked a pedestrian sidewalk. Individuals were thereby forced to step onto a highway in order to circumvent the tree and successfully continue to travel along the sidewalk. *Verity*, 585 A.2d at 65. We concluded that "when the state has knowledge that it has created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation, the public duty doctrine does not shield the state from liability." *Id.* at 67.

Therefore, we must consider the facts presently before us in light of the standard established in *Verity*.

Statutorily it is clear that a municipality bears the burden of placing and maintaining traffic-control signals. According to G.L.1956 (1989 Reenactment) § 24-5-1, towns in Rhode Island are obligated to maintain highways so that they are safe and convenient for travelers. If a town fails to maintain a highway or a bridge and an individual is injured as a consequence, the individual may seek recovery against the municipality for the resulting damages. G.L.1956 (1988 Reenactment) § 45-15-8.

By placing an automatic signal light at an intersection, the municipality governs the behavior of drivers and pedestrians who utilize those areas. Therefore, drivers and pedestrians who come in contact with controlled intersections rely on the operation of the automatic lights both for their safety and in order to remain within the law. We are aware of the fact that two traffic lights governed Dyer Street traffic at the intersection, and only one of those lights was not working properly at the time of the accident. As it is not unusual for a person's view of a traffic signal to be obstructed by a vehicle or another object, we are of the opinion that in situations in which two lights control the same flow of traffic, each light functions as an independent and indispensable signal.

Therefore, if one such light is not operating properly, the fact that the other light is operational will not excuse the disrepair of the malfunctioning equipment. By placing the traffic controls at Dyer and Friendship Streets, the city caused people approaching the intersection to rely on the signals. By failing to correct the malfunction, of which it should have been aware, the city jeopardized the safety of those utilizing the intersection in reliance on the traffic lights.

We have recognized the "volatility of the public duty doctrine and governmental immunity" and are of the opinion that the circumstances before us rise to the level of the egregious conduct exhibited in *Verity* and therefore warrant the creation of yet

another inroad into the protective immunity of the public duty doctrine. We conclude, therefore, that given the present circumstances, the public duty doctrine does not bar the plaintiffs' claims. In light of this conclusion we need not determine whether the malfunctional light constituted a public nuisance.

For the reasons stated, the appeal of the plaintiffs is sustained and, therefore, we vacate the order and remand the case to the Superior Court.

KELLEHER, J., did not participate.