**David TORRES**

v.

**Kathleen DAMICIS, in her capacity as Treasurer of the Town of Richmond.**

**No. 2003–576–Appeal.**

Supreme Court of Rhode Island.

June 24, 2004.

James A. Currier, Providence, for Plaintiff.

Stephen P. Harten, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The plaintiff, David Torres (Torres), appeals from a summary judgment in favor of Kathleen Damicis, in her capacity as treasurer for the Town of Richmond (the town),[1] in this personal injury action.

---

1. The plaintiff originally named Patricia Sunderland, the treasurer for the Town of Richmond at the time of the injury, in his complaint. Kathleen Damicis later was substituted for Patricia Sunderland by the oper-

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we affirm the judgment of the Superior Court.

## Facts and Travel

The facts are not in dispute. In October 1998, Cosmo J. Gentile (Gentile) applied to the town's building and zoning official for a building permit to construct a garage on his property on Foster Farm Drive.[2] On the building permit application, Gentile identified Mar Mark Builders (Mar Mark) as the contractor for the project, but failed to list its Rhode Island contractor's registration number. The building inspector issued the permit, and Gentile engaged Mar Mark to construct the garage. Thereafter, Mar Mark hired Torres to work on the project.[3] It is undisputed that the building inspector did not attempt to ascertain Mar Mark's registration number.

Torres was injured on November 13, 1998, when he fell off the roof of the garage. He was standing on staging adjacent to the roof while installing flashing on the roof. A coworker was bringing bundles of shingles up to the roof and "slamming" them down near where Torres was working. This caused granules from the shingles to dislodge and slide down the roof. Torres slipped on granules that had dislodged from the shingles. He fell from a height of twenty-eight feet and suffered serious injuries.

After presenting a claim of $500,000 to the Richmond Town Council, Torres filed a complaint against the town alleging that the building permit was "improperly and/or illegally issued in violation of Section 5–65–3 R.I. Gen Laws[,]"[4] as a result of which he suffered serious injuries, medical expenses, lost wages, loss of earning capacity, and pain and suffering.

The town answered the complaint, asserting a host of affirmative defenses, including assumption of the risk, contributory negligence, and, most pertinent to this appeal, immunity under the public duty doctrine.

Discovery ensued, and in April 2003, Torres moved for summary judgment. The town objected and filed its own motion for summary judgment. Torres's motion for summary judgment was first heard on May 19, 2003, and denied. Noting the town's public duty doctrine defense, the motion justice said that public duty doctrine questions are "usually very fact driven," and that "only under unusual certain circumstances do they go out on motion for summary judgment."

The town's motion for summary judgment was heard on September 8, 2003, before a second motion justice. At the hearing, the motion justice said it was unclear from the face of Torres's complaint whether he was alleging that the town was negligent in issuing the building permit or

---

ation of Rule 25(d)(1) of the Superior Court Rules of Civil Procedure after taking office.

2. The record contains two building permit applications, Nos. 10320 and 11883. Apparently, Gentile was overcharged on the first application and a subsequent permit was drawn up by the building inspector with the proper fee and the same information transposed from the first application.

3. Mar Mark's principal, Mark Torres, is plaintiff's brother.

4. The relevant section of G.L. 1956 chapter 65 of title 5 deals with the issuance of building permits to registered contractors and homeowners.

whether he merely was alleging a violation of G.L.1956 § 5–65–3. She proceeded to analyze the complaint as if each of those allegations had been brought.

Citing our opinion, *Graff v. Motta*, 695 A.2d 486 (R.I.1997), for the proposition that the "Legislature did not intend to deprive the State or town of any sovereign power 'unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language,'" *id.* at 489 (quoting *In re Sherman*, 565 A.2d 870, 872 (R.I.1989)), the motion justice ruled that "there is no indication that Rhode Island General Laws Section 5–65–3 provides a cause of action against the town or waives the town's sovereign immunity." Accordingly, she held that Torres's cause of action against the town under § 5–65–3 failed as a matter of law.

Turning to Torres's negligence claim, the motion justice ruled that because licensing and inspection activities are reserved for the state and not the general public, any damages arising from these activities would qualify for immunity from tort claims under the public duty doctrine. She cited our decision in *Boland v. Tiverton*, 670 A.2d 1245, 1247–48 (R.I.1996), as authority for her ruling.

She also found that Torres had not offered any evidence that would invoke either exception to the public duty doctrine. She noted that an exception to the public duty doctrine exists when a plaintiff can prove that a state or municipal official owes a special duty to the plaintiff. The motion justice found that "[i]n the instant case, plaintiff has not submitted any evidence that he was a specific, identifiable person who had come within the knowledge of the town Building Inspector." Therefore, he did not qualify under the special duty exception to the public duty doctrine. Furthermore, the motion justice found that Torres did not provide sufficient evidence to meet the "egregious conduct" exception to the public duty doctrine. As a result, she granted the town's motion for summary judgment. Judgment for the town was entered on September 16, 2003, from which Torres timely appealed.

## Discussion

On appeal, Torres asserts that issues of material fact exist about whether he qualifies under an exception to the public duty doctrine. Specifically, Torres argues that § 5–65–3 was not designed to protect the general public; rather, it was designed in part to protect construction workers by assuring that their employers have obtained workers' compensation insurance. Thus, because the building inspector could or should have foreseen that Torres was a member of an identifiable group of individuals who could be financially injured by the lack of workers' compensation insurance, the town owed Torres a special duty. Moreover, he asserts, "the very fact that a construction worker is on a job where there is no workers' compensation insurance puts him in a position of peril." Therefore, the building inspector's failure to ascertain his employer's registration number before the building permit was issued constituted egregious conduct.

Torres's second argument on appeal is that the motion justice's ruling at the hearing on May 19, 2003, is the "law of the case." He contends that because the town submitted a "Consolidated Memorandum" to support its motion for summary judgment and objection to plaintiff's motion for summary judgment, then the town's motion for summary judgment, like his own, must be denied because the first motion justice said that public duty doctrine cases usually go to a jury. Consequently, because Torres was denied summary judgment for this reason, that is now the "law of the case."

We are called upon to determine whether the provisions of § 5–65–3(c) create a cause of action against the authority issuing a building permit for failing to comply with its requirements. This question hinges on whether the actions of the authority issuing the permit are entitled to immunity under the public duty doctrine.

Our *de novo* standard in reviewing a motion justice's decision to grant summary judgment is well established. *Roe v. Gelineau,* 794 A.2d 476, 481 (R.I.2002). "We shall affirm the judgment only when, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact remains to be decided, and that the moving party is entitled to judgment as a matter of law." *Id.* (citing *Heflin v. Koszela,* 774 A.2d 25, 29 (R.I. 2001)). Similarly, our *de novo* standard when interpreting a statute is well-known. *Champlin's Realty Associates, L.P. v. Tillson,* 823 A.2d 1162, 1165 (R.I.2003) (citing *Town of Warren v. Thornton–Whitehouse,* 740 A.2d 1255, 1259 (R.I.1999)). "When interpreting a statute, our ultimate goal is to give effect to the Legislature's intention." *Id.* "In doing so, this Court applies the well-established rule of construction that, when words in a statute are unambiguous, they must be given their plain, ordinary and usually accepted meaning." *Id.* (citing *Pier House Inn, Inc. v. 421 Corporation, Inc.,* 812 A.2d 799, 804 (R.I.2002)). When a statute is ambiguous, however, we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature. *Direct Action for Rights and Equality v. Gannon,* 819 A.2d 651, 659 (R.I.2003).

### Public Duty Doctrine

The public duty doctrine arose out of the state's sovereign immunity from suit when engaging in uniquely governmental functions. We previously have explained, "[h]istorically, under the common law, the state, as well as a municipality, enjoyed sovereign immunity, which could be waived only by the state's deliberate and explicit waiver." *Graff,* 695 A.2d at 489 (citing *Mulvaney v. Napolitano,* 671 A.2d 312, 312 (R.I.1995) (mem.)). We presume that sovereign immunity has not been waived unless we can find explicit indices of waiver. "[T]he Legislature did not intend to deprive the State of any sovereign power 'unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language.'" *Id.* (quoting *In re Sherman,* 565 A.2d at 872). We also have said that in determining whether a waiver exists "the language of the statute must be closely parsed and strictly construed." *Reagan Construction Corp. v. Mayer,* 712 A.2d 372, 373 (R.I.1998) (per curiam).

Section 5–65–3 has the cumbersome title, "**Registration for work on a structure required of contractor—Issuance of building permits to unregistered or unlicensed contractors prohibited—Evidence of activity as a contractor—Duties of contractors[,]**" and in a somewhat unusual syntax provides:

"(c) A city, town, or the state does not issue a building permit to anyone required to be registered under this chapter who does not have a current, valid certificate of registration identification card or valid license which is presented at the time of issuance of a permit and becomes a condition of a valid permit. Each city, town, or the state which requires the issuance of a permit as a condition precedent to construction, alteration, improvement, demolition, movement or repair of any building or structure or the appurtenance to the structure also requires that each applicant for the permit file as a condition to issuing the permit a written statement, subscribed by the applicant, that the

applicant is registered under the provisions of this chapter, giving the number of the registration and stating that the registration is in full force and effect, or, if the applicant is exempt from the provisions of this chapter, listing the basis for the exemption. The city, town, or the state lists the contractor's registration number on the permit obtained by that contractor, *and if a homeowner is issued a permit, the building inspector or official must ascertain registration numbers of each contractor on premise and informs the registration board of any non-registered contractors performing work at the site.*" Section 5–65–3(c). (Emphasis added.)

We detect nothing in the statute that explicitly waives a municipality's immunity for failing to ascertain a contractor's registration number. Here, the parties agree that the building inspector did not ascertain Mar Mark's registration number. Nor did he inform the registration board that Mar Mark was not registered. These non-actions clearly violate the terms of § 5–65–3(c). The language of the statute, however, purports to prohibit a municipality from issuing a building permit only to an unregistered contractor. If the applicant is a contractor, the duty is on the contractor to present a valid registration certificate or license, and to file a written statement. A building inspector's obligation to ascertain a contractor's registration number, however, obtains only "if a homeowner is issued a permit." Thus, the obligation does not even arise until the permit has, in fact, been issued, and the building inspector is merely required to inform the registration board "of any non-registered contractors performing work at the site." Implicit in this language is the contemplation that non-registered contractors, such as Mar Mark, will, in fact, be working at the site pursuant to a validly issued building permit.

■ We recognize, however, that the Legislature explicitly has waived sovereign immunity as an absolute defense against liability for torts committed by governmental entities. General Laws 1956 § 9–31–1 provides:

"**Tort liability of state.**—The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9–1–25, hereby be liable in all actions of tort in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in this chapter."

"This waiver of sovereign immunity allows a plaintiff to recover damages in tort if he or she is able to prove negligence on the part of the state." *Haley v. Town of Lincoln,* 611 A.2d 845, 848 (R.I.1992) (citing *Gagnon v. State,* 570 A.2d 656, 658 (R.I. 1990)). "In order to make out a prima facie case of negligence, the plaintiff must demonstrate that he or she is owed a legal duty by the state, the breach of which serves as the basis of liability." *Id.*

Although the state and its political subdivisions can be liable in tort in the same manner as a private individual, there are limitations to this liability. We previously have noted that chapter 31 of title 9 "by itself does not establish a cause of action in tort against governmental entities." *Catone v. Medberry,* 555 A.2d 328, 330 (R.I. 1989). Governmental entities are protected, for instance, when engaging in activities that normally are not performed by private people, and are shielded from liability for torts committed in engaging in these activities. *Haley,* 611 A.2d at 849 (citing *Bierman v. Shookster,* 590 A.2d 402, 403 (R.I.1991)). Such activities fall within the ambit of the public duty doctrine. *See id.*

We previously have explained the rationale for the immunity provided to state and municipal authorities under the public duty doctrine. That immunity for tort liability exists because "[t]he public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons." *Haley,* 611 A.2d at 849 (citing *Bierman,* 590 A.2d at 403). "The rationale behind the public duty doctrine 'is to encourage the effective administration of governmental operations by removing the threat of potential litigation.'" *Id.* (quoting *Catone,* 555 A.2d at 333). We have immunized and "continue to immunize the government from harm resulting from discretionary acts." *Catone,* 555 A.2d at 333.

On previous occasions we held that "[t]he activities and the inspection that are required to ensure compliance with the state building code cannot be engaged in by private enterprise." *Boland,* 670 A.2d at 1247–48 (quoting *Quality Court Condominium Association v. Quality Hill Development Corp.,* 641 A.2d 746, 750 (R.I. 1994) (*Quality Court*)). We concluded that "[a]ny damages caused by the alleged negligence of a municipal building inspector during the performance of his or her employment, therefore, qualifies for the tort immunity provided by the general public duty doctrine." *Boland,* 670 A.2d at 1248. Unless Torres can prove that his circumstances qualify under one of the exceptions to the public duty doctrine, we see no reason to depart from this general grant of immunity.

### Special Duty Exception

■ There are two exceptions to the general immunity that the public duty doctrine provides to a municipal building inspector or other municipal or state authority during the course of his or her employment. The first exception to the pub-

lic duty doctrine exists when a plaintiff can prove that the state or its subdivision owed him a special duty. *Boland,* 670 A.2d at 1248.

"The existence of that special duty can be established when a plaintiff has had prior contact with state or municipal officials who then knowingly embark on a course of conduct that endangers the plaintiff[ ], or when a plaintiff has 'otherwise specifically come within the knowledge of the officials so that the injury to that particularly identified plaintiff can be or should have been foreseen.'" *Id.* (quoting *Knudsen v. Hall,* 490 A.2d 976, 978 (R.I.1985)).

We previously have held that a city owed a group of plaintiffs a special duty in *Quality Court,* 641 A.2d at 750–51. In that case, the City of Pawtucket owed the plaintiffs a special duty when the building inspector was "acutely aware of a threat to the specific plaintiffs" because of his specific knowledge of the building's occupants, his knowledge of building code violations that either he or a representative from his office observed, his attendance at meetings with the architect, his receipt of written notice of specific building code violations, his return to the building on a number of occasions to view the repair work, and his assertion to his superior that all the building's units complied with the building code. *Id.* Although we noted that "[a]s a general rule building codes or ordinances impose an obligation on behalf of the municipality to the public at large[,]" we held that "in this instance the actions of the city brought [plaintiff] into the realm of its specific knowledge and thereby created a special duty." *Id.* at 751.

In the present case, the motion justice found that "plaintiff has not submitted any evidence that he was a specific, identifiable person who had come within the knowledge of the town Building Inspector."

Specifically, she found that Torres had not offered any evidence

> "that the town was aware that the contractor had any employees; that the town was aware that the plaintiff was employed by the contractor; or that the town was aware that plaintiff would be working on the premises that were the subject of the building permit. Indeed the Building Inspector testified during the course of his deposition that it was not clear to him that MarMark would be doing the work for the homeowner and that if it would be doing the work, the homeowner would need to supply him, as Building Inspector, with the contractor[']s registration number, which according to the Building Inspector[,] the homeowner never did. Plaintiff has offered no evidence to contradict the testimony."

Clearly, Torres himself never came within the specific knowledge of the building inspector. There cannot be any special duty owed to Torres predicated on the special duty exception when the municipal official had neither contact nor specific knowledge of the injured individual. *See Boland*, 670 A.2d at 1248.

The present case is analogous to our decision in *Haworth v. Lannon*, 813 A.2d 62 (R.I.2003) (per curiam). In *Haworth*, residents sued the Town of Warren for negligent inspection when an inspector issued certificates of occupancy for newly constructed homes but failed to ensure that the homes were not subject to flooding. *Id.* at 64. The town issued the building permits and certificates of occupancy for both houses before the buyers were known to the town. *Id.* We held that the plaintiffs offered no evidence indicating that, at the time the homes were being inspected, the town was aware that this group of plaintiffs would be the future buyers of the homes. *Id.* at 65.

Furthermore, in *Haworth*, 813 A.2d at 65, we compared the facts of the case with those in *Quality Court*, 641 A.2d at 748, 750–51. In *Quality Court*, the building inspector had specific knowledge of the building occupants because he had contact with them before confirming his earlier issuances of certificates of occupancy. However, in *Haworth*, 813 A.2d at 65, the certificates of occupancy were issued to the developer before the plaintiffs purchased the homes. The plaintiffs "failed to show that the town should have foreseen injury to them in particular." *Id.*

We hold that in the present case, the building inspector had no specific knowledge of Torres because he issued the building permit to the homeowner before he had definitely ascertained the identity of the contractor, much less the contractor's employees.

■ Next, Torres and amicus curiae [5] argue that there is a special duty owed to Torres because he is part of a specifically identifiable group of individuals who the town knew was at risk of harm by virtue of its inspection and permitting duties under § 5-65-3 and the other provisions of chapter 65 of title 5 that require contractors to carry workers' compensation insurance. Torres argues that an experienced building inspector should have considered "whether one man would ordinarily do such a job alone." Therefore, the building inspector should have foreseen that a project by a contractor employing workers to construct a garage could result in injury to those employees, and thus the inspector must make sure that the contractor is registered and therefore carries workers' compensation insurance.

Torres and amicus curiae analogize the present case to *Gagnon v. State*, 570 A.2d 656 (R.I.1990) (*Gagnon*). In *Gagnon*, a

---

**5.** The Rhode Island Trial Lawyers Association filed an amicus brief.

mother of a child in a daycare center brought an action against the state for negligent supervision. Her child allegedly had been molested at the daycare center, and the state renewed the daycare center's license after a cursory investigation into complaints of sexual abuse at the center revealed no evidence supporting the complaint. *Id.* at 658. We reversed a dismissal on the pleadings because of our "rule favoring a broad interpretation of pleadings[,]" and because a claim of negligent supervision alleges more than "a statutory obligation owed by the state to the public-at-large." *Id.* at 659.

We note that the action in *Gagnon* would not have survived if it had been brought on a claim that the state was negligent in licensing the daycare facility. *Id.* We conceded that even if the state were negligent in licensing the facility, "such an allegation without more cannot be the source of a special duty owed by the state to plaintiffs." *Id.* Because we consistently have held that allegations of negligent licensing do not establish that the state or a political subdivision thereof owes a special duty to a plaintiff or foreseeable group of plaintiffs, *see Gagnon*, 570 A.2d at 659; *Ryan v. State Department of Transportation*, 420 A.2d 841, 843 (R.I.1980), we hold that § 5–65–3(c) does not establish a special duty to Torres. We agree with the motion justice that chapter 65 of title 5 "is designed to protect the public in general." In this case, § 5–65–3(c) creates a duty to the general public that building inspectors will "ascertain registration numbers of each contractor * * * and inform[ ] the registration board of any non-registered contractors performing work at the site." The duty imposed on building officials under this section is to ascertain registration numbers, not to inspect construction sites for the risk of injury to employees of unregistered contractors. This is a licensing duty, not a supervisory duty. Hence, any duty under § 5–65–3(c) is owed to the general public. *See, e.g., Gagnon*, 570 A.2d at 659.

## Egregious Conduct Exception

We now turn to Torres's assertion that he qualifies for the second exception to the public duty doctrine for egregious conduct when the municipality "has knowledge that it created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation." *Yankee v. LeBlanc*, 819 A.2d 1277, 1279 (R.I.2003) (per curiam) (quoting *Martinelli v. Hopkins*, 787 A.2d 1158, 1168 (R.I.2001)). In a previous case, we held that the egregious conduct exception to the public duty doctrine applied to a plaintiff's allegation that the state was liable for her injuries when she was struck by an automobile after being forced to step off of a sidewalk onto Route 44. *Verity v. Danti*, 585 A.2d 65, 65–66 (R.I.1991). The plaintiff therein was walking on a sidewalk that was blocked by a large tree, forcing her to walk into the street to get around the tree. *Id.* at 65. As a result, she was struck by a car and injured. *Id.* at 66. We held that the egregious conduct exception applied because the state knew about the perilous condition that the tree presented, but still evaluated the condition of the sidewalk as "satisfactory." *Id.* at 67.

■ In the present case, the motion justice correctly ruled that the egregious conduct exception had not been met. She found that there was no evidence that the building inspector knew that he had issued a permit to an unlicensed contractor or that an unlicensed contractor was constructing Gentile's garage and did nothing about it. The building inspector may have been remiss in failing to follow up with Gentile to get the contractor's registration number; however, the alleged position of peril leading to Torres's financial injuries, *i.e.*, the lack of workers' compensation cov-

erage, was not created by the building inspector's failure to inform the registration board that Torres's employer was unregistered. We agree with the motion justice and hold that Torres's claim under the egregious conduct exception fails as a matter of law.

### Law of the Case

Torres's final argument is that the order that issued as a result of his motion for summary judgment is the "law of the case," and operated as a denial of the town's motion for summary judgment, precluding the summary judgment entered as a result of the hearing on September 8, 2003.

> "Under the law of the case doctrine, 'ordinarily, after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling.'" *Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 683 (R.I.1999) (quoting *Salvadore v. Major Electric & Supply, Inc.,* 469 A.2d 353, 355–56 (R.I.1983)).

Contrary to Torres's assertion, however, the second motion justice, who presided over the hearing on September 8, 2003, did not disturb any rulings made by the first motion justice.

The motion justice at the hearing on May 19, 2003, only denied Torres's motion for summary judgment, nothing more. At the hearing, counsel for Torres asked the court whether it would reach the town's recently filed motion for summary judgment. The court replied, "I didn't look at that because it was scheduled for next month," then added, "as I said, it seems to me * * * pretty clear that public duty doctrine stuff usually goes to a jury. But I won't be here. So, you might have better luck with [the second motion justice]." These remarks were merely her impres-

sion of how the town's motion might be received; it was not a ruling. Furthermore, the case docket sheet entry for the hearing on May 19, 2003, records only that Torres's motion for summary judgment was denied. The town's motion for summary judgment was not heard until September 8, 2003. It is irrelevant that the town's arguments against Torres's motion for summary judgment and its own arguments for summary judgment were consolidated in the same memorandum.

### Conclusion

The judgment of the Superior Court is affirmed. The papers in this case shall be returned to the Superior Court.

Justice FLAHERTY did not participate.