[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court on Defendant's motion for partial summary judgment. The Defendants include the City of Cranston and its Treasurer, Joseph Granata (hereinafter "the Defendants" or "the City"). Defendants argue that the public duty doctrine precludes liability for Count IV of the complaint, a count alleging common law fraud,[1] and that they are entitled to judgment as a matter of law on that count.
Facts
The following material facts are undisputed. The City of Cranston is a municipality subject to G.L § 9-31-1 (2004), the Governmental Tort Claims Act. The Plaintiff in this case, Benedetto Broccoli, was at the time of the activities at issue in this case, the owner of 1400 Cranston Street, in Cranston, Rhode Island ("the Premises"). Sometime after October 10, 2001, the City and Mr. Broccoli entered into discussions regarding the acquisition of the Premises by the City in conjunction with the construction of a new police station. Plaintiff's claim of fraud (Count IV) arises from the eventual breakdown of those discussions.
 Standard of Review
The standard of review on motions for summary judgment is well settled. If, when the evidence is viewed in the light most favorable to the non-moving party there remains no genuine issue of material fact, then judgment may be entered as a matter of law. Yankee v. LeBlanc,819 A.2d 1277, 1279 (R.I. 2003); Super. R. Civ. P. 56(c). It is an extreme remedy that should be cautiously applied. Maggiacomo v. Stanley,771 A.2d 896, 898 (R.I. 2001).
 Analysis
The sole issue to be decided on this motion is whether or not the public duty doctrine applies to Plaintiff's claim of fraud in this case. The public duty doctrine is a common law doctrine that developed out of the application of the sovereign immunity afforded to the state. Torresv. Damicis, 853 A.2d 1233, 1237 (R.I. 2004). The legislature explicitly waived the sovereign immunity otherwise afforded the state and its political subdivisions with regard to actions in tort by enactment of G.L. § 9-31-1. Notwithstanding that waiver, the common law public duty doctrine remains available under certain circumstances to immunize the state and municipal entities from certain types of tort liabilities.Torres, 853 A.2d at 1238.
 "The public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons." Haley v. Town of Lincoln, 611 A.2d 845, 849 (R.I. 1992).
The public duty doctrine affords immunity from suit to a governmental entity when it performs an activity that would not ordinarily be performed by a private individual. Bierman v. Shookster, 590 A.2d 402, 404
(R.I. 1991); Catone v. Medberry, 555 A.2d 328, 333 (R.I. 1989). Two exceptions to the public duty doctrine have developed. The first is the so-called "special duty exception," which precludes the application of the immunity when it is shown that the state owed the plaintiff a special duty either because of prior contact or previous knowledge of the plaintiff. Torres, 853 A.2d at 1239. The second is the so-called "egregious conduct exception," which precludes invocation of the defense in circumstances wherein the public defendant has failed to remedy a peril caused by its own conduct and of which it has knowledge. Id. at 1241.
The public duty doctrine exists in order to "encourage the effective administration of governmental operations by removing the threat of potential litigation." Haley, 611 A.2d at 849 (quoting Catone,555 A.2d at 333). Recently, our Supreme Court has reacted to the continued viability of the doctrine in light of increasing expansion of exceptions to its application. See e.g., Martinelli v. Hopkins,787 A.2d 1158, 1167 (R.I. 2001) (while declining to directly address the abolition of the doctrine, the court stated that "the doctrine verges on the brink of being a legal enigma because of its many exceptions");Bierman, 590 A.2d at 404 (acknowledging that "[t]he shield of immunity afforded governmental entities . . . has been substantially dismantled in recent years to afford individuals recourse for tortious injuries suffered as a result of governmental actions").
In Haworth v. Lannon, 813 A.2d 62 (R.I. 2003), the Rhode Island Supreme Court based its holding in favor of the doctrine's applicability on the fact that the "public treasury should not be exposed to claims involving acts done for the public as a whole." Id. at 66. Because subjecting the government to increased liability would open the proverbial floodgates of litigation, the Court reasoned that those floodgates should be carefully monitored so as to allow the government to continue to "perform duties necessary to the functioning of a free society." Id. (quoting Orzechowskiv. State, 485 A.2d 545, 549-50 (R.I. 1984)).
The question of whether the public duty doctrine applies to a claim of fraud has not been decided by the Rhode Island Supreme Court. Although the Rhode Island Supreme Court has generally analyzed the public duty doctrine in the context of negligence cases, (see e.g., Shookster,590 A.2d at 404; Catone, 555 A.2d at 333; Haworth, 813 A.2d at 62), the Court has suggested that the doctrine may also be applicable to claims involving certain intentional torts. L.A. Ray Realty v. Cumberland,698 A.2d 202 (R.I. 1997). The plaintiffs in that case were engaged in a number of real estate projects. An amendment to the zoning ordinance passed by referendum, and later invalidated by the Rhode Island Supreme Court, resulted in the denial of a number of applications for subdivision that plaintiffs then had pending before the Cumberland Planning Commission. The Supreme Court upheld the trial court's finding that the enactment of the invalid ordinance with the intent to interfere with plaintiff's property right satisfied the elements of the tort. Clearly, the elements of interference with prospective contractual relations include knowledge by the interferor with the existence of a business relationship, as well as an intentional act of interference therewith.See Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I. 1986).
Notwithstanding the fact that the tort in question in the L.A. RayRealty case was intentional, the Court in its analysis found that both
the public duty doctrine and its exceptions were available to the parties. The Court upheld the trial court's finding that the Town was liable for the tort of intentional interference with prospective contractual relations by the actions of the Town's officials demonstrating an intent to interfere with plaintiff's legitimate expectation of developing their property under subdivision regulations existing at the time of the filing of subdivision applications. L.A. RayRealty, 698 A.2d at 207. As to the public duty doctrine, the Court found that the adoption and application of a zoning ordinance is a governmental function and, therefore, upheld the trial justice's consideration of the public duty doctrine. Id. at 208. The Court, however, determined that proof of the intentional tort (adoption of an invalid ordinance in order to interfere with plaintiffs' legitimate expectations regarding their property) was also sufficient to prove the exception to the public duty doctrine for egregious conduct. Id. at 208-09.
Similarly, in this case, the Plaintiff alleges that certain facts, if proven at trial, may constitute the intentional tort of fraud. The elements of fraud include: (1) a false representation, (2) intent that the plaintiff rely on that representation, (3) justifiable reliance on the part of the plaintiff on the false representation, and (4) resultant damages. Zaino v. Zaino, 818 A.2d 630, 638 (R.I. 2003); Travers v.Spidell, 682 A.2d 471, 472-73 (R.I. 1996).
The Plaintiff herein alleges that the City represented its intent to take the property by eminent domain, and represented to the Plaintiff that requests for zoning would be denied because of the potential increase in the value of his property that would result from such zoning variances. In reliance on the City's representations, Plaintiff alleges that he let other zoning designations on the property lapse, and that the property remained unproductive for over a year.
First, in applying the public duty doctrine, it must be ascertained whether or not the City was engaged in a purely governmental function not normally performed by private parties. It is clear that acquiring land by eminent domain is a purely governmental function. The Plaintiff does assert in his brief in objection to Defendants' motion for summary judgment, that there remain issues of material fact as to whether the City was engaged in a governmental function, alleging that the City was instead engaging in land speculation, something that private parties do all the time. Plaintiff's Reply Brief at 10-11. The Plaintiff's allegation that the City asserted its intent to employ eminent domain, however, is the basis of the fraud claim. Viewing the allegations in the light most favorable to the Plaintiff, it is alleged that the City used the threat of acquisition by eminent domain to gain some unfair advantage over the Plaintiff during the course of negotiations. (See Broccoli Aff. dated June 28, 2004.) As a result, the public duty doctrine would be applicable to the exercise by Defendants of a governmental function. SeeParent v. Woonsocket Housing Authority, 143 A.2d 146 (R.I. 1958) (suggesting eminent domain is a governmental function).
Second, the Court must ascertain whether either of the exceptions to the public duty doctrine applies. The Court held in Verity v. Danti,585 A.2d 65, 65-66 (R.I. 1991) that the egregious conduct exception applied when the plaintiff was struck by an automobile when she was forced to step off the sidewalk into the road because it was blocked by a large tree. Because the city knew of the danger caused by the tree, but did nothing to alleviate the risk, the Court held that it was not immune from suit under the doctrine. Id. at 67. Likewise, and more analogously, the Court held in L.A. Ray Realty that the intentional interference with plaintiff's contractual relations, which resulted in economic damages, triggered the egregious conduct exception. 698 A.2d 202, 208-09.
Plaintiff alleges that intentional misrepresentations were made by the City upon which he relied to his detriment. To the extent Plaintiff is able to establish facts consistent with his burden of proof, this Plaintiff, as the plaintiff before the Court in L.A. Ray Realty, would likewise have established a factual basis to come within the egregious conduct exception to the public duty doctrine. When the disputed facts are viewed in the light most favorable to the Plaintiff, the Court must afford the Plaintiff an opportunity to prove the version of the story he has put forward, and accordingly, summary judgment must be denied.[2]
Counsel shall present an order consistent with this decision.
[1] This case last came before another Justice of this Court on a 12(b)(6) motion to dismiss for failure to state a claim. A number of counts were dismissed at that time, including § 1983 claims, claims for punitive damages, and individual claims against Mr. Toic. Two counts remained thereafter; a takings claim and a common law fraud claim. Only the fraud claim (Count IV) is before the Court for summary disposition at this time.
[2] It certainly seems to the Court that another way to analyze the applicability of the public duty doctrine to the Plaintiff's claims herein is simply to conclude that the doctrine should not be applied to intentional torts. See e.g., Case v. Bogosian, 1996 R.I. Super. LEXIS 14, 19-21 (public duty doctrine inapplicable to claim of intentional tort of conversion). See also, Clark v. Red Bird Cab Co., 442 S.E.2d 75, 79
(N.C.App. 1994). However, it appears that the R.I. Supreme Court has been more cautious by concluding that the doctrine may apply to certain intentional torts, but that the "egregious conduct" exception may obviate the defense.